John L. REESE, Petitioner–Appellant,

v.

Howard PETERS, III, Warden, Pontiac Correctional Center, et al., Respondents–Appellees.

No. 89–2083.

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 24, 1991.

Decided Feb. 28, 1991.

John Reese, pro se.

David E. Bindi and Terence M. Madsen, Asst. Attys. Gen., Office of the Atty. Gen., Chicago, Ill., for respondents-appellees.

Before CUDAHY, EASTERBROOK and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

This is the third time John L. Reese has sought federal collateral review of his conviction for armed robbery. Reese was convicted in 1980, and the state's appellate court affirmed in 1981. One petition for habeas corpus was dismissed for failure to exhaust state remedies. After Reese filed another petition, we held in 1986 that the evidence met the constitutional minimum, that the state was entitled to try Reese in a special court for recidivists, and that *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), bars relitigation of Reese's effort to exclude some of the evidence used against him. *United States ex rel. Reese v. Fairman*, 801 F.2d 275 (7th Cir.1986). While pursuing his second col-

lateral attack in federal court, Reese was pressing still other arguments on the state courts. He dropped all of these except a contention that representation at trial by a lawyer who had been suspended from the rolls is an automatic violation of the sixth amendment. The state courts rejected this argument in 1988, and Reese returned to federal court with this contention and more besides.

Four Justices in *Rose v. Lundy*, 455 U.S. 509, 520–21, 102 S.Ct. 1198, 1204–05, 71 L.Ed.2d 379 (1982) (plurality opinion), suggested that sequential presentation of this kind is an abuse of the writ. See Rule 9(b) of the Rules Governing Section 2254 Cases. The district court disagreed. 713 F.Supp. 1178, 1180–81 (N.D.Ill.1989). Because the state does not seek to defend its judgment by arguing that Reese has abused the writ, we express no opinion on this subject and need not try to anticipate how the Supreme Court will decide *McCleskey v. Zant*, 890 F.2d 342 (11th Cir.1989), cert. granted, — U.S. ——, 110 S.Ct. 2585, 110 L.Ed.2d 266 (1990), argued Oct. 31, 1990.

Reese lost most of his case in the district court because, the judge believed, he forfeited his arguments by withdrawing them from the state court's consideration on post-conviction review. On only one contention did Reese persevere: his claim that representation by a lawyer who has been suspended from the bar is always ineffective assistance of counsel.

Reese asks us to equate the "Counsel" to which the sixth amendment refers with "member of the bar in good standing" in modern parlance. Ineffective assistance by counsel leads to relief only if prejudicial to the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). But having *no* "Counsel" always requires a new trial. *Holloway v. Arkansas*, 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978). Cf. *United States v. Cronic*, 466 U.S. 648, 659 & n. 25, 104 S.Ct. 2039, 2047 & n. 25, 80 L.Ed.2d 657 (1984). Charles K. Snowden, Reese's representative at trial, was not authorized to practice law. He had neglected to pay his dues, and the state had suspended his license. Ill.Rev.Stat. ch. 110A ¶ 756(d). Although Snowden eventually paid the dues and penalties arid was reinstated to the bar, see *id.* at ¶ 756(e), nothing we could find in Illinois law makes the reinstatement retroactive. So, we shall assume, Snowden could have been imprisoned for unauthorized practice of law. That means, Reese submits, that he had no "Assistance of Counsel for his defence" within the meaning of the Constitution.

■ Judge Friendly's opinion in *Solina v. United States*, 709 F.2d 160 (2d Cir. 1983), shows that the "Counsel" to which the sixth amendment refers is a professional advocate who meets the standards set by the court. Thus despite the arguments in *United States v. Whitesel*, 543 F.2d 1176 (6th Cir.1976), cf. Comment, *The Criminal Defendant's Sixth Amendment Right to Lay Representation*, 52 U.Chi.L.Rev. 460 (1985), expertise in law does not "Counsel" make. *Solina* held that someone who took courses in law school but had not been admitted to any court's bar is not "Counsel" under the sixth amendment. It does not follow, however, that failure to satisfy technical licensing requirements always destroys one's status as counsel. See *Solina*, 709 F.2d at 167 & n. 9. Cf. *United States v. Merritt*, 528 F.2d 650 (7th Cir.1976).

"Counsel" in 1791 meant a person deemed by the court fit to act as another's legal representative and inscribed on the list of attorneys. See § 35 of the Judiciary Act of 1789. There were no bar exams, no unified bars, no annual dues, no formal qualifications. Although there were a handful of law schools, none was accredited by the ABA (there was no ABA), and few students completed the program. John Marshall dropped out of law school after a few months of study. Leonard Baker, *John Marshall: A Life in Law* 61–66 (1974). Would-be lawyers earned the right to practice through apprenticeship, appearing in court under the tutelage of a practitioner until they satisfied the presiding judge that they could handle cases independently. Part of that tradition survives in the practice of admission *pro hac vice*. Courts grant motions allowing representa-

tion by persons who do not belong to their bars. Usually the person admitted *pro hac vice* belongs to *some* bar, but it may be the bar of a distant state or a foreign nation. The enduring practice of admission *pro hac vice* demonstrates that there is no one-to-one correspondence between "Counsel" and membership in the local bar.

The *constitutional* question is whether the court has satisfied itself of the advocate's competence and authorized him to practice law. Mountebanks, as in *Solina*, and persons who obtain credentials by fraud, as in *United States v. Novak*, 903 F.2d 883 (2d Cir.1990), are classes apart from persons who satisfied the court of their legal skills but later ran afoul of some technical rule. Lawyers who do not pay their dues violate a legal norm, but not one established for the protection of clients; suspensions used to wring money from lawyers' pockets do not stem from any doubt about their ability to furnish zealous and effective assistance. Snowden may well have belonged to the bar of a federal district court in 1980, and his failure to pay his state dues would not have produced automatic suspension from the federal bar. *In re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). Cf. *United States v. Hoffman*, 733 F.2d 596 (9th Cir.1984) (a lawyer's suspension from the Florida bar on account of conviction for crime does not automatically require his suspension from the bar of a federal court or demonstrate that the defendant in the federal prosecution lacked the "Assistance of Counsel for his defence"). Federal courts do not collect annual dues, and a state may not hold membership in the federal bar hostage to extract its own tribute.

It would make no sense to say that Snowden could furnish "Counsel" in 1980 in a federal prosecution, to which the sixth amendment applies directly, but not in a state prosecution, to which the sixth amendment applies only by its absorption through the due process clause of the fourteenth. We therefore agree with *Beto v. Barfield*, 391 F.2d 275 (5th Cir.1968), which holds that a lawyer whose license had been suspended for failure to pay dues still may be "Counsel". Accord, *Johnson v. State*, 225 Kan. 458, 590 P.2d 1082 (1979). *Barfield* derived this conclusion from a close examination of state law, but we do not think the details of state law matter: the sixth amendment does not mean one thing in Texas and another in Illinois. What matters for constitutional purposes is that the legal representative was enrolled after the court concluded that he was fit to render legal assistance. Snowden satisfies that standard.

Illinois may if it wishes annul the convictions of persons represented by lawyers whose licenses have been suspended for financial reasons. But the unpublished decision in Reese's case, together with *People v. Elvart*, 189 Ill.App.3d 524, 136 Ill.Dec. 807, 545 N.E.2d 331 (1st Dist.1989), shows that Illinois does not doubt the ability of lawyers suspended for nonpayment of dues to furnish effective assistance.

Reese presses on us three additional claims, which the district judge deemed forfeit because withdrawn from the post-conviction proceedings in state court. The district court applied *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), to such claims, citing *Williams v. Duckworth*, 724 F.2d 1439, 1442 (7th Cir. 1984), and *Zellers v. Duckworth*, 763 F.2d 250, 252 (7th Cir.1985). These cases raised questions, see *Prihoda v. McCaughtry*, 910 F.2d 1379, 1385 (7th Cir.1990), but the parties do not ask us to revisit the subject.

■ *Williams* and *Zellers* started from the fact that state law allowed the prisoner to raise a particular claim in post-conviction proceedings. Failure to raise arguments in a manner state law permitted, we held, surrendered any entitlement to a federal decision. When state law does *not* allow the prisoner to present a particular claim, the omission—submitting to limitations established by law—is not an independent and adequate state ground precluding federal review. It may be that an earlier omission, the one blocking resort to post-conviction relief, will activate *Sykes*, but the omission of the claim from the state

collateral attack is not an additional obstacle.

Illinois allows prisoners to contend on collateral attack that they did not receive effective assistance of counsel, even if no such claim was presented on direct appeal, when the claim depends on facts outside the trial record. *Perry v. Fairman*, 702 F.2d 119, 122 (7th Cir.1983) (collecting cases); *People v. Caballero*, 126 Ill.2d 248, 128 Ill.Dec. 1, 533 N.E.2d 1089 (1989). *Williams* and *Zellers* both involve ineffective assistance claims and govern directly, to the extent Reese is arguing that Snowden's performance was sub-par. Treating these claims as barred does not offend against *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), which applies a "plain statement" rule to forfeitures based on state grounds. A person who *never* presents a claim to state court cannot demand that the state court give a reason, rooted in state law, for not considering that claim. When a state would treat complete failure to present a claim as forfeiture, as Illinois would, Ill. Rev.Stat. ch. 38 ¶ 122–3, the federal court may enforce the state's bar on collateral review. *Harris*, 489 U.S. at 269–70, 109 S.Ct. at 1046–47 (O'Connor, J., concurring).

Reese's remaining claims cannot be disposed of in this fashion. He contends that the prosecution used perjured testimony and neglected to reveal exculpatory evidence. See *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Because Reese did not present these contentions on direct appeal from his conviction, Illinois would refuse to entertain them on collateral attack. *People v. Gaines*, 105 Ill.2d 79, 87–88, 85 Ill.Dec. 269, 473 N.E.2d 868 (1984). Illinois treats any claims omitted on direct appeal as waived, and claims raised and rejected on the merits are barred by res judicata. This means not only that Reese has exhausted his state remedies, *Teague v. Lane*, 489 U.S. 288, 297–98, 109 S.Ct. 1060, 1067–68, 103 L.Ed.2d 334 (1989); *Mikel v. Thieret*, 887 F.2d 733, 736 (7th Cir.1989), but also that

failure to urge these claims on collateral review is not significant. Illinois would not *let* Reese argue them on a post-conviction petition unless he could establish fundamental unfairness, *People v. Burns*, 75 Ill.2d 282, 26 Ill.Dec. 679, 683, 388 N.E.2d 394, 398 (1979); *People v. Goerger*, 52 Ill.2d 403, 406, 288 N.E.2d 416, 418 (1972), so his post-trial omission cannot be an independent and adequate state ground supporting the judgment of conviction.

Still, the omission that would lead Illinois to rebuff a collateral attack leads us to the same conclusion. Illinois demands that claims based on *Brady* and *Giglio* be raised on direct appeal. Reese did not raise them when Illinois required him to. Failure to do so forfeits the claims unless Reese can show "cause" and "prejudice". *Teague*, 489 U.S. at 298, 109 S.Ct. at 1068. The "cause" to which Reese points is ineffective assistance of counsel. But *that* possibility has been foreclosed by Reese's withdrawal of the argument on post-conviction review. *Mikel*, 887 F.2d at 737. To the extent knowledge of the facts underlying the *Brady* claim was unavailable at the time of direct appeal, Reese has "cause" for not raising the argument then, but the consequence is to return the *Brady* matter to the domain of *Williams* and *Zellers*. So although we do not agree with the district court's precise reasons, we agree with its conclusion that Reese is not entitled to a decision on any claim other than that a suspended lawyer is not "Counsel". As we have rejected that argument on the merits, the judgment is

AFFIRMED.