263 N.J. Super. 488 (1993)
623 A.2d 280
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RONALD McCLAIN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 3, 1993.
Decided April 13, 1993.
*490 Before Judges BRODY, LANDAU and THOMAS.
Jay L. Wilensky, Assistant Deputy Public Defender, argued the cause for appellant (Zulima V. Farber, Public Defender, attorney; Mr. Wilensky, of counsel and on the brief).
Ronald McClain, appellant, filed a pro se supplemental brief.
Robert E. Bonpietro, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney; Mr. Bonpietro, of counsel and on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
Following a jury trial defendant was convicted as an accomplice of felony murder, a violation of N.J.S.A. 2C:11-3a(3). The trial judge imposed a prison sentence of thirty years without parole, the mandatory minimum term for the crime. The accomplice had wrenched a pocketbook from the grasp of a 69-year-old woman while she was walking on the sidewalk. The pocketbook's shoulder strap broke in the struggle. The woman thereafter began to chase the robber, but could not keep up. Soon after help arrived, she suffered a cardiac arrest. Although resuscitated, she never regained consciousness and died seven months later. Medical evidence and evidence of her demeanor and appearance immediately before the heart attack support the jury's implicit finding that the victim died of fright and stress caused by the robbery.
The primary defense was alibi. Another defense was that the robbery did not cause the victim's death. The jury obviously rejected the alibi defense and found that the robbery had caused the death. The central issue on appeal is whether the *491 trial judge adequately charged the jury respecting the causation issue.
We have two briefs from defendant, one his attorney's brief and the other defendant's pro se supplemental brief. The attorney's brief raises the following points:
I. THE TRIAL COURT FAILED TO INSTRUCT THE JURY AS TO THE "REMOTENESS" ELEMENT OF FELONY MURDER, THEREBY DEPRIVING THE DEFENDANT OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL. U.S. CONST. AMEND. XIV; N.J. CONST., (1947), ART. I, PAR 1. (Not Raised Below.)
II. THE TRIAL COURT DEPRIVED THE DEFENDANT OF HIS CONSTITUTIONAL RIGHTS TO A REPRESENTATIVE JURY AND EQUAL PROTECTION BY DISMISSING, WITHOUT AN EVIDENTIARY HEARING, THE DEFENDANT'S CHALLENGE TO THE RACIAL COMPOSITION OF THE JURY PANEL. U.S. CONST. AMENDS. VI, XIV; N.J.CONST. (1947) ART. I, PARAS. 1, 5.
III. THE 30-YEAR MANDATORY MINIMUM SENTENCE IMPOSED IN THIS CASE CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT, IN VIOLATION OF THE CONSTITUTIONS OF THE UNITED STATES AND OUR STATE. U.S. CONST. AMENDS. VIII, XIV; N.J. CONST. (1947), ART. I, PAR. 12.
Defendant's pro se supplemental brief raises these points:
I. THE EVIDENCE PRESENTED WAS LEGALLY INSUFFICIENT TO CONVICT DEFENDANT OF FELONY MURDER OR ANY FORM OF HOMICIDE.
II. DEFENDANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO A FAIR TRIAL AND AN IMPARTIAL AND PROPERLY INSTRUCTED JURY WERE VIOLATED WHEN THE TRIAL JURY WAS INSTRUCTED ONLY ON THE OFFENSE OF PURPOSEFUL AND KNOWING MURDER.
III. BY IMPROPERLY VOUCHING FOR THE CREDIBILITY OF THE STATE'S WITNESSES, THE STATE DEPRIVED DEFENDANT OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL. (U.S. CONST. AMEND. XIV; N.J. CONST. (1947) ART. I, PAR. 10) (Not Raised Below) AND FOURTEENTH AMENDMENT.
We are satisfied from a careful review of this record that the issues raised in defendant's supplemental brief are clearly without merit and require no further discussion. R. 2:11-3(e)(2).
Felony murder is an absolute-liability crime because the actor need not have contemplated or consciously risked the victim's death. State v. Martin, 119 N.J. 2, 20, 573 A.2d 1359 *492 (1990). The general definitions of criminal causation, found in N.J.S.A. 2C:2-3, provide the following respecting absolute-liability crimes:
e. When causing a particular result is a material element of an offense for which absolute liability is imposed by law, the element is not established unless the actual result is a probable consequence of the actor's conduct.
Thus the definition of causation in felony murder embraces two distinct elements: the actor's conduct must in fact have caused the death and the death must have been "a probable consequence" of that conduct.[1]
The trial judge included both elements in his charge to the jury:
In order for you to find Mr. McClain guilty of murder, the State is required to prove beyond a reasonable doubt from all of the evidence in the case each of the following three elements of the crime charged:
One, the State must prove beyond a reasonable doubt that Mr. McClain is guilty as an accomplice of the crime of robbery of Elizabeth Karl on December 20, 1983.
And two, the State must prove beyond a reasonable doubt that but for the robbery, including its aftermath of flight, Elizabeth Karl would not have died.
And three, the State must prove beyond a reasonable doubt that Elizabeth Karl's death was the probable consequence of the robbery.
Defendant did not object to the charge as given, but now contends for the first time that the judge should have explained to the jury more fully what he meant when he said, "Elizabeth Karl's death was the probable consequence of the robbery."
Defendant's argument is inspired by Martin, supra, decided after defendant's trial. There the defendant was found guilty of purposeful or knowing murder as well as felony murder caused by arson. The State presented evidence that the defendant was angry because he had been ejected from a drinking party in an apartment on the third floor of a wooden house. He wreaked revenge by setting the house on fire knowing that *493 his conduct would place at risk the lives of its intoxicated occupants. To accomplish his purpose he poured an accelerant on the floor of the stairway and ignited it by setting fire to a bag of trash that served as a fuse. One of the intoxicated occupants, who could not save herself because she was in an alcoholic stupor, died in the fire.
The defendant presented the facts differently. He claimed that there was no accelerant. He set fire to the bag of trash merely to create a mess on the floor, never expecting that the fire would spread beyond the bag to the entire building and cause the death of an occupant who could not escape because she was intoxicated.
The Court reversed the convictions and ordered a new trial because the trial judge had failed to explain to the jury that the causal elements of the crime required more than a finding that the victim died from the fire.
With respect to any crime requiring purposeful or knowing culpability, N.J.S.A. 2C:2-3 provides:
b. When the offense requires that the defendant purposely or knowingly cause a particular result, the actual result must be within the design or contemplation, as the case may be, of the actor, or, if not, the actual result must involve the same kind of injury or harm as that designed or contemplated and not be too remote, accidental in its occurrence, or dependent on another's volitional act to have a just bearing on the actor's liability or on the gravity of his offense.
Thus with respect to the purposeful or knowing murder charged in Martin, in addition to proving that the defendant's conduct in fact caused the death, the State had to prove that the defendant designed or contemplated the death and that the death was not "too remote, accidental in its occurrence, or dependent on another's volitional act to have a just bearing on the actor's liability or on the gravity of his offense." The "too remote" language is also part of the definition of causation where the crime charged carries only reckless or criminally negligent culpability. N.J.S.A. 2C:2-3c.
With respect to the felony murder charge in Martin, the Court pointed out that N.J.S.A. 2C:2-3e, as we previously *494 noted, requires that the State prove not only that the defendant's conduct caused the death but also that the death was "a probable consequence of the actor's conduct." Martin, supra, at 25, 573 A.2d 1359.
The Court then considered whether a jury should be given further guidance on the meaning of "a probable consequence of the actor's conduct." It rejected what might be considered the literal meaning of that phrase, i.e. that in a felony murder case the death must have been "more likely than not" under the circumstances. Id. at 30, 573 A.2d 1359. Such a meaning would require the State to prove more than the statute requires. Instead, the Court concluded that "a probable consequence" should be explained in the same "too remote" language that appears in N.J.S.A. 2C:2-3b and -3c. In felony murder cases "in addition to other prescribed requirements, the result must `not be too remote, accidental in its occurrence, or dependent on another's volitional act to have a just bearing on the actor's liability or the gravity of his offense.'" Martin, supra, at 31-32, 573 A.2d 1359.
Defendant asks us to reverse his conviction because the trial judge did not use the "too remote" language to explain the meaning of "a probable consequence." Because the issue is raised as plain error, we must determine whether the judge's failure to use the language later prescribed in Martin was "clearly capable of producing an unjust result." R. 2:10-2.
We first observe that a major function of the "too remote" language is to lighten the State's burden of proving causation. Without being given that language to explain the meaning of "a probable consequence," the jury could have believed that the State had to prove that it is more likely than not that a 69-year-old woman, such as the victim here, would die as a result of such a crime. There certainly was no injustice to defendant if the charge left the jury with that belief.
*495 Defendant claims in his brief that he was prejudiced in three ways as a result of the judge's failure to use the "too remote" language in his charge.
He first argues that had the judge used that language the jury might have considered that the victim's death was too remote for him to be criminally responsible in that "the alleged direct cause of the victim's death was not the actions of the robber, but rather the victim's physiological response to those actions." Instructing the jury that the State had to prove that the victim's death was "a probable consequence" of the robbery adequately conveyed that particular factual consideration. Moreover, not only did defendant's attorney fail to request a more specific charge on the point or object to the charge that was given, but he himself did not make the argument in his summation. We do not fault the attorney. He simply realized that the argument probably would be unavailing given the facts of the case.
Defendant next argues in his brief that had the judge used the "too remote" language, the jury might have considered that he was too far removed from the conduct of the accomplice to be criminally responsible for the victim's death. "And, not only were the actions in question not those of the defendant, but there is no evidence that it was the defendant's choice that the elderly and evidently frail Mrs. Karl would be the target." The only argument that defendant's attorney made in his summation respecting the "probable consequence" element of causation was:
Now, the standard that Judge Arnold will instruct you as to the murder is that but for the robbery, Mrs. Karl would not have died, and that her death was a probable consequence of the robbery. Ladies and gentlemen, the key here is a probable consequence of the robbery.
I would suggest to you that even as an accomplice you cannot hold him accountable for what [the person who took the pocketbook] did in the purse snatching. He simply could not have known Mrs. Karl would die by the events.
Defendant confuses the basis for felony murder liability as an accomplice with criminal causation. To ameliorate the harshness of accomplice liability for a felony murder, the Code *496 affords a defendant the affirmative defense that he had "no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury." N.J.S.A. 2C:11-3a(3)(d). That defense, "which is part of a defendant's case, sheds no light on the meaning of `probable consequence.'" Martin, supra, at 29, 573 A.2d 1359. The judge properly explained the affirmative defense to the jury. The judge's instruction on the point meets defendant's argument.
Defendant finally argues in his brief that had the judge used the "too remote" language, the jury might have considered that the victim did not die as a result of the robbery. "Moreover, the medical testimony included a statement by the victim's physician that it was possible but unlikely that she could have died of cardiac arrest had the incident not occurred." The argument confuses the "but for" element of causation with the "probable consequence" element.
We are fully satisfied that the trial judge's failure to supplement his reference to "a probable consequence" with the "too remote" language prescribed in Martin was not "clearly capable of producing an unjust result." R. 2:10-2.
On the day of trial, defendant's attorney challenged the array of veniremen after they had entered the court room. He objected because he saw that only one of the 103 potential jurors was African-American. The judge correctly overruled the challenge and proceeded with the trial. Even if the particular panel had disproportionately few African-Americans compared with the population of the county, a successful challenge on the basis of the equal-protection clause or the sixth amendment requires more. State v. Bey, 129 N.J. 557, 583, 610 A.2d 814 (1992). To make a prima facie showing, a defendant must demonstrate that African-Americans had been under-represented on jury panels in the county over a "significant period of time" as the result of racially-based selection procedures. State v. Coyle, 119 N.J. 194, 213, 574 A.2d 951 (1990). Defendant *497 had ample opportunity before the first day of trial to make such a showing if he could.
The mandatory minimum thirty-year prison term without parole for felony murder is not cruel and unusual punishment. State v. Johnson, 206 N.J. Super. 341, 348, 502 A.2d 1149 (App.Div. 1985), certif. denied, 104 N.J. 382, 517 A.2d 390 (1986).
Affirmed.
NOTES
[1] The conviction under review came after a retrial. We had reversed defendant's prior conviction because the trial judge failed to explain to the jury that the State had to prove not only that the robbery caused the victim's death but also that her death was a probable consequence of the robbery.