[Cite as *State v. J.R.*, 2022-Ohio-1664.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                        No. 110521

    v.                            :

J.R.,                                   :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED, VACATED, AND REMANDED
**RELEASED AND JOURNALIZED:** May 19, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-652417-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jeffrey Schnatter and Samantha Sohl, Assistant Prosecuting Attorneys, *for appellee.*

Paul W. Flowers, Co., L.P.A., Louis E. Grube and Melissa A. Ghrist, *for appellant.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant J.R. appeals her convictions after she was bound over to the General Division of the Cuyahoga County Court of Common Pleas (the "General Division") and pled guilty to multiple counts in connection with an

armed burglary. J.R. contends that the General Division lacked subject-matter jurisdiction over the case because (1) the attorney who represented her during the juvenile-court proceedings was under a registration suspension at the time of the representation and she was, therefore, denied her right to assistance of counsel in violation of the United States and Ohio Constitutions and (2) the juvenile court abused its discretion in ordering J.R. transferred to the General Division pursuant to the discretionary bindover provisions in R.C. 2152.10 and 2152.12. J.R. also contends that the juvenile court violated her constitutional right to confront and cross-examine her accusers by admitting hearsay evidence at the amenability hearing and that her indefinite sentence, imposed under the Reagan Tokes Law, is unconstitutional.

{¶ 2} For the reasons that follow, we find that J.R. was denied her constitutional right to the assistance of counsel during the juvenile bindover proceedings. Accordingly, we reverse the trial court's judgment, vacate J.R.'s convictions, vacate the juvenile court's transfer order and remand the case to the juvenile court for further proceedings.

## Factual Background and Procedural History

### Juvenile Court Proceedings

{¶ 3} On February 27, 2020, the state filed a seven-count delinquency complaint in the Cuyahoga County Court of Common Pleas, Juvenile Division (Cuyahoga J.C. No. DL20102542), against J.R., alleging that she had committed acts that would constitute the following crimes if she were an adult: one count of

aggravated murder, one count of aggravated robbery, one count of aggravated burglary, one count of murder, two counts of felonious assault and one count of attempted murder. Each of the counts also included one- and three-year firearm specifications. The charges related to J.R.'s alleged participation in an armed burglary on December 22, 2019 that resulted in the shooting death of Kevin King and serious injury to Floyd Morgan. J.R. and her friend, S.B., who knew the victims, allegedly "scoped out" King's house, located on Auburndale Avenue in Cleveland, Ohio for a potential burglary. Shortly after the girls left King's house, three males with firearms burst into the house and began shooting. J.R. and S.B. allegedly assisted the males in gaining entry to the house by opening the door for them. J.R. was 15 at the time of the incident. S.B. was 16.

{¶ 4} On March 4, 2020, the state filed a notice of mandatory bindover and a motion for an order to relinquish jurisdiction for the purpose of criminal prosecution pursuant to R.C. 2152.10(B) ("motion for discretionary bindover") on the charges alleged in the complaint. J.R. retained attorney Robert Chester Brooks II to represent her during the juvenile court proceedings. At J.R.'s arraignment held later that day, the state withdrew the notice of mandatory bindover because J.R. did not meet the statutory requirements for mandatory bindover. Brooks entered denials, on J.R.'s behalf, "as to the entirety of the complaint" and the motion for discretionary bindover.

{¶ 5} The juvenile court scheduled a probable cause hearing. J.R.'s mother was not present at the hearing. Brooks stated that because he had "made several

attempts to contact [J.R.'s mother] and was unable to get an answer," a guardian ad litem had been appointed for J.R. "to share with some of the decision making relative to this." On July 13, 2020, J.R. waived her probable cause hearing and stipulated to a finding of probable cause. Brooks stated that he had "conferred with the [g]uardian ad [l]item and informed him that our strategy was to stipulate as to probable cause." After conducting a colloquy explaining what it meant to stipulate to probable cause and confirming that J.R. had an opportunity to discuss the issue with her counsel and her mother, understood the consequences of waiving the probable cause hearing and was doing so "knowingly, intelligently and voluntarily," the juvenile court accepted the stipulation, found that there was probable cause to believe that J.R. had committed each of the acts charged and referred J.R. for "a full investigation into [her] social history, education, family situation, and any other factor on whether the child is amenable to juvenile rehabilitation," including a psychological evaluation by the Cuyahoga County Juvenile Court Diagnostic Clinic.

**Amenability Hearing**

{¶ 6} On August 13, 2020, the juvenile court conducted an amenability hearing to determine whether J.R.'s case should be transferred to the General Division for prosecution as an adult. The parties stipulated to the admissibility of a psychological evaluation report prepared by Dr. Lynn Williams, a forensic psychologist with the Cuyahoga County Juvenile Court Diagnostic Clinic. Cleveland Police Detective Charles McNeeley, Jr., Harrison Brill (J.R.'s probation officer) and Kimberly King (the mother of the deceased victim) testified on behalf of the state at

the amenability hearing. Over Brooks' objection, the state also read a statement from the surviving victim, Morgan, into the record at the hearing. J.R. presented no witnesses at the hearing.

{¶ 7} Following the hearing, the juvenile court concluded that "the weight of the factors that are in favor of transfer outweigh the other factors" and granted the state's motion for discretionary transfer. In its August 17, 2020 journal entry, the juvenile court set forth its findings as follows:

> The court finds after a full investigation including a mental examination of said child made by a duly qualified person, and after full consideration of the child's prior juvenile record, family environment, school record, efforts previously made to treat and rehabilitate the child, including prior commitments to the Department of Youth Services, the nature and severity of the offense herein, the age, physical, and mental condition of the victim as effected by the matter herein, and other matters of evidence, that there are reasonable grounds to believe that the child herein is not amenable to care or rehabilitation within the juvenile system.
>
> The court further finds that the safety of the community may require that the child be subject to adult sanctions.
>
> The court considered the relevant factors in favor of transfer pursuant to R.C. 2152.12(D) and makes the following findings:
>
> 1. The victim suffered physical or psychological harm, or serious economic harm.
>
> 2. The child's relationship with the victim facilitated the act charged.
>
> 3. At the time of the act charged, the child was awaiting a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.
>
> 4. The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

5. The child is emotionally, physically, or psychologically mature enough for the transfer.

6. There is not sufficient time to rehabilitate the child within the juvenile system.

The Court considered the relevant factors against transfer pursuant to R.C. 21152.12(E) and makes the following findings:

1. The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

{¶ 8} On August 25, 2020, the juvenile court transferred the case to the General Division for further proceedings.

**Proceedings in the General Division[1]**

{¶ 9} On September 3, 2020, a Cuyahoga County Grand Jury indicted J.R. and two codefendants, S.B. and Maurice Chesney, Jr. (one of the three alleged shooters), on 11 counts: two counts of aggravated murder, one count of murder, two counts of aggravated robbery, two counts of aggravated burglary, three counts of felonious assault and one count of attempted murder. All of the counts included one- and three-year firearm specifications. J.R. initially pled not guilty to all charges.

{¶ 10} On March 31, 2021, the parties reached a plea agreement. J.R. pled guilty to four first-degree felonies: an amended count of involuntary manslaughter with one- and three-year firearm specifications (Count 1), an amended count of

---

[1] J.R. was represented by different counsel, attorneys in the Cuyahoga County Public Defender's Office, during the proceedings in the General Division.

aggravated robbery (deleting the firearm specifications) (Count 4), an amended count of aggravated burglary (deleting the firearm specifications) (Count 6) and an amended count of attempted murder (deleting the firearm specifications) (Count 9). In exchange for her guilty pleas, the parties agreed that J.R. would receive a recommended "base sentence of anywhere from eight to 18 years" if she "cooperates and testifies against any and all co-conspirators" and that the remaining counts against her would be nolled.

{¶ 11} J.R. entered guilty pleas to the amended counts as agreed. After conducting a plea colloquy,[2] the trial court found that J.R. had entered her guilty pleas "knowingly, voluntarily, and intelligently," accepted her guilty pleas and dismissed the remaining counts.

{¶ 12} On April 21, 2021, the trial court sentenced J.R. to an aggregate minimum prison term of 13 years and a maximum prison term of 18 years.[3] The

---

[2] Although the parties have not raised the issue, we note that the trial court's plea colloquy did not comply with Crim.R. 11(C)(2)(c). The transcript shows that the trial court never informed J.R. that she had a right to compulsory process, i.e., to subpoena and call witnesses to testify on her behalf. This constitutes plain error and would warrant vacating J.R.'s convictions. *See, e.g., State v. Miller,* 159 Ohio St.3d 447, 2020-Ohio-1420, 151 N.E.3d 617, ¶ 13 ("[A] trial court's failure to notify a defendant of his constitutional rights listed in Crim.R. 11(C)(2)(c) amounts to plain error."), citing *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 24; *State v. Martin*, 12th Dist. Warren No. CA2018-09-105, 2019-Ohio-2792, ¶ 24-32, 36 (sua sponte finding trial court committed plain error by not properly advising appellant of her constitutional rights pursuant to Crim.R. 11(C)(2)(c) and vacating defendant's conviction and no contest plea).

[3] The court found that the involuntary manslaughter and aggravated burglary counts were allied offenses of similar import that merged for sentencing, and the state elected to have J.R. sentenced on the involuntary manslaughter count. As to Count 1, the trial court found that the one- and three-year firearm specifications merged for sentencing. The court sentenced J.R. to three years on the firearm specification to be served prior to and consecutive to a minimum ten-year term on the base offense. In

trial court also imposed five years of mandatory postrelease control. Defense counsel objected to the constitutionality of the Reagan Tokes Law at both the change-of-plea hearing and the sentencing hearing.

{¶ 13} J.R. appealed, raising the following assignments of error for review:

Assignment of Error I: The General Division lacked subject matter jurisdiction over these proceedings because the Juvenile Division's decision to bind the defendant over for prosecution as an adult was an abuse of discretion.

Assignment of Error II: The defendant was denied the right to confront and cross-examine her accusers during the bindover hearing in the Juvenile Division.

Assignment of Error III: The trial court erred by sentencing the defendant pursuant to the Reagan Tokes Law, which violates the state and federal guarantees of procedural due process.

**Notice of Attorney Suspension**

{¶ 14} Throughout the juvenile court proceedings, J.R. was represented by Brooks. However, unbeknownst to J.R., the state or the juvenile court, on November 1, 2019 — four months before he entered his notice of appearance for J.R. — Brooks was suspended from the practice of law in Ohio for noncompliance with Gov.Bar R. VI. Gov.Bar R. VI requires attorneys to file a certificate of registration and pay a registration fee on a biennial basis. Brooks had not registered for the 2019/2021 attorney-registration biennium by the September 1, 2019 deadline and

_____

accordance with the Reagan Tokes law, the court imposed "an additional five years, as an indefinite term" to the sentence on Count 1, resulting in an aggregate indefinite sentence of 13 years to 18 years. On Counts 4 and 9, the trial court sentenced J.R. to eight years on each count, to be served concurrently with each other and concurrently with the sentence on Count 1.

had not filed evidence of compliance with Gov.Bar R. VI or come into compliance with the rule within 60 days of the deadline. *11/05/2019 Administrative Actions*, 2019-Ohio-4529. His suspension remained in effect throughout the juvenile court proceedings. Brooks was again "sanctioned and suspended" on October 14, 2020 for not complying with the continuing legal education requirements mandated by Gov.Bar R. X(3) and not filing evidence of compliance or coming into compliance as required by Gov.Bar R. X(18)(A). Brooks had not completed his continuing legal education requirements for the 2014/2015, 2016/2017 or 2018/2019 biennial compliance periods. *10/15/2020 Administrative Actions*, 2020-Ohio-4908.[4]

{¶ 15} On December 8, 2021, the state filed a "notice of attorney suspension" with the trial court, advising J.R. and the trial court that Brooks had been under a registration suspension since November 1, 2019 and a continuing legal education suspension since October 14, 2020.

{¶ 16} On December 15, 2021, J.R. filed an unopposed motion with this court to supplement the record with the notice of suspension and requesting leave to raise the following additional assignment of error for review:

> Assignment of Error IV: The General Division lacked subject matter jurisdiction over these proceedings because the defendant was denied the assistance of counsel at her bindover hearing in the Juvenile Division.

---

[4] According to the Ohio Supreme Court's online attorney directory, those suspensions remain in effect as of March 7, 2022. *See* Ohio Supreme Court Attorney Directory, https://www.supremecourt.ohio.gov/AttorneySearch/#/40881/attyinfo (accessed Mar. 7, 2022).

{¶ 17} On January 10, 2022, this court granted J.R.'s motion and ordered additional briefing on J.R.'s fourth assignment of error.

**Law and Analysis**

{¶ 18} We address J.R.'s fourth assignment of error first.[5] In her fourth assignment of error, J.R. argues that because Brooks was suspended from the practice of law in Ohio at the time he represented her, she was "complete[ly] deni[ed]" the assistance of counsel at her bindover hearing in violation of the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. She contends that, due to this "structural error" and "defect in the bindover procedure," the General Division lacked subject-matter jurisdiction over the case and her convictions must be vacated.

**The Bindover Procedure**

{¶ 19} "Juvenile courts possess exclusive jurisdiction over children alleged to be delinquent for committing acts that would constitute a crime if committed by

---

[5] We note that J.R.'s convictions in this case resulted from guilty pleas. As a general matter, a valid guilty plea waives all nonjurisdictional appealable errors except those that preclude a knowing, intelligent and voluntary plea. *See, e.g., State v. Elliott*, 8th Dist. Cuyahoga No. 102226, 2015-Ohio-3766, ¶ 14; *State v. Mays*, 2014-Ohio-3815, 18 N.E.3d 850, ¶ 44 (8th Dist.) ("'[A] defendant who * * * voluntarily, knowingly, and intelligently enters a guilty plea with the assistance of counsel "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."'"), quoting *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 78, quoting *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

As noted above, however, the trial court did not comply with Crim.R. 11(C)(2)(c) when accepting J.R.'s guilty pleas. As such, J.R.'s guilty pleas were not valid. Thus, even if the alleged constitutional error in this case were otherwise waivable, J.R.'s guilty pleas would not preclude her from raising the issue here.

an adult." *In re M.P.*, 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, ¶ 11, citing R.C. 2151.23(A); *Mays* at ¶ 17.

{¶ 20} Under certain circumstances, however, the juvenile court may transfer a case, or bind a juvenile over, to the adult criminal system where the juvenile may be tried as an adult and face criminal sanctions. R.C. 2152.10; 2152.12; *In re M.P.* at ¶ 11. There are two types of transfers under Ohio's juvenile justice system — mandatory transfers and discretionary transfers. *State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, ¶ 10. As stated above, this case involves a discretionary transfer.

{¶ 21} A "'[d]iscretionary transfer * * * allows judges the discretion to transfer or bind over to adult court certain juveniles who do not appear to be amenable to care or rehabilitation within the juvenile system or appear to be a threat to public safety.'" *Id.*, quoting *State v. Hanning*, 89 Ohio St.3d 86, 728 N.E.2d 1059 (2000); R.C. 2152.12(B). Where a complaint is filed alleging that a child is delinquent for committing an act that would be a felony if committed by an adult, the juvenile court may transfer the case to the General Division if the juvenile court finds (1) the child was 14 years of age or older at the time of the act charged; (2) there is probable cause to believe that the child committed the act charged and (3) the child is not amenable to care or rehabilitation within the juvenile system and the safety of the community may require that the child be subject to adult sanctions. R.C. 2152.10(B); 2152.12(B).

{¶ 22} If the first two elements are met, the juvenile court must continue the proceedings for an investigation into "the child's social history, education, family situation, and any other factor bearing on whether the child is amenable to juvenile rehabilitation, including a mental examination of the child." R.C. 2152.12(C); Juv.R. 30(C). Once that investigation is complete, the juvenile court holds an amenability hearing to determine whether the child is "amenable to care or rehabilitation within the juvenile system" or whether "the safety of the community may require that the child be subject to adult sanctions." R.C. 2152.12(B)(3); Juv.R. 30(C). In making this determination, the juvenile court must consider all relevant factors, including 17 factors specified in R.C. 2152.12(D) and (E) that weigh in favor of or against a transfer. R.C. 2152.12(B)(3), (C)-(E); Juv.R. 30(C). "'Absent a proper bindover procedure * * *, the juvenile court has the exclusive subject-matter jurisdiction over any case concerning a child who is alleged to be a delinquent.'" *State v. Smith*, Slip Opinion No. 2022-Ohio-274, ¶ 41, quoting *State v. Wilson*, 73 Ohio St.3d 40, 652 N.E.2d 196 (1995), paragraph one of the syllabus. That jurisdiction cannot be waived. *Wilson* at paragraph two of the syllabus. A conviction rendered by a court lacking subject-matter jurisdiction is void. *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 22 ("'[A] judgment of conviction is void if rendered by a court having either no jurisdiction over the person of the defendant or no jurisdiction of the subject matter, i.e., jurisdiction to try the defendant for the crime for which he was convicted.'"), quoting *State v. Perry*, 10 Ohio St.2d 175, 178, 226 N.E.2d 104 (1967).

**A Juvenile's Right to Counsel During Bindover Proceedings**

{¶ 23} Because of the "tremendous consequences" following a decision that a child must lose the protections of the juvenile system and face trial as an adult, a bindover proceeding — a "critically important" stage in juvenile proceedings — must "measure up to the essentials of due process and fair treatment." *Kent v. United States*, 383 U.S. 541, 553-554, 556, 560-562, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) (There must be "procedural regularity" in a bindover proceeding "sufficient in the particular circumstances to satisfy the basic requirements of due process and fairness."); *see also In re D.M.*, 140 Ohio St.3d 309, 2014-Ohio-3628, 18 N.E.3d 404, ¶ 11.

{¶ 24} This "due process and fair treatment" includes the right of an accused juvenile to the assistance of counsel. *See, e.g., Kent* at 561-562 (A juvenile's right to counsel in a bindover proceeding "is not a formality" or "a grudging gesture to a ritualistic requirement"; "[i]t is of the essence of justice."); *see also In re Gault*, 387 U.S. 1, 36, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (a juvenile facing commitment to an institution has a right to counsel "'at every step in the proceedings against him'"; "[t]he juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it"), quoting *Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 78 (a juvenile's right to counsel in juvenile court proceedings "is a venerable right at the core of the administration of

justice and due process"). "'[T]he right to counsel is the right to the effective assistance of counsel.'" *In re C.S.* at ¶ 93, quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), fn. 4.[6]

**Per Se Ineffective Assistance of Counsel**

{¶ 25} Generally, to establish a violation of the right to counsel, the represented individual must show that (1) counsel's performance fell below an objective standard of reasonable representation and (2) counsel's errors prejudiced the individual, i.e., a reasonable probability that but for counsel's errors, the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. Although this test originated in context of criminal proceedings, courts have applied the *Strickland* test in determining whether a juvenile was denied the effective assistance of counsel in juvenile proceedings as well. *See, e.g., In re J.T.*, 2017-Ohio-7723, 85

---

[6] Although it appears that Brooks was privately retained by J.R. rather than appointed by the court, this distinction does not alter J.R.'s constitutional right to effective assistance of counsel. *Cf. Solina v. United States*, 709 F.2d 160, 165 (2d Cir.1983) ("'A proper respect for the Sixth Amendment disarms petitioner's contention that defendants who retain their own lawyers are entitled to less protection than defendants for whom the State appoints counsel * * *. The vital guarantee of the Sixth Amendment would stand for little if the often uninformed decision to retain a particular lawyer could reduce or forfeit the defendant's entitlement to constitutional protection. * * * [W]e see no basis for drawing a distinction between retained and appointed counsel that would deny equal justice to defendants who must choose their own lawyers.'"), quoting *Cuyler v. Sullivan*, 446 U.S. 335, 344-345, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

N.E.3d 763, ¶ 36 (8th Dist.); *State v. Johnson*, 2015-Ohio-96, 27 N.E.3d 9, ¶ 51 (8th Dist.).

{¶ 26} In *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the United States Supreme Court recognized a "narrow exception" to the *Strickland* requirements when considering whether a criminal defendant was denied his or her right to counsel under the Sixth Amendment. *See State v. Lucas*, 2020-Ohio-1602, 154 N.E.3d 262, ¶ 36 (8th Dist.). The court held that there are certain circumstances "that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," such that ineffectiveness and prejudice are presumed and a denial of an accused's Sixth Amendment right to counsel is found "without inquiry into the actual conduct" of the proceedings.[7]

---

[7] In so holding, the United States Supreme Court distinguished and rejected "an inferential approach" utilized by the Tenth Circuit Court of Appeals in determining that the defendant's constitutional right to the effective assistance of counsel had been violated. In reversing the defendant's conviction, the Tenth Circuit had inferred that the defendant's constitutional right to the effective assistance of counsel had been violated based on its evaluation of five criteria: (1) the time afforded for investigation and preparation, (2) the experience of counsel, (3) the gravity of the charge, (4) the complexity of possible defenses and (5) the accessibility of witnesses to counsel. *Cronic* at 652-653. The United States Supreme Court held that the Tenth Circuit had erred in using this approach, noting that although these five factors "are relevant to an evaluation of a lawyer's effectiveness in a particular case," "neither separately nor in combination do they provide a basis for concluding that competent counsel was not able to provide [the defendant] with the guiding hand that the Constitution guarantees." *Id*. at 662-663. The Court further held that "only when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial," that that case was "not one in which the surrounding circumstances [made] it unlikely that the defendant could have received the effective assistance of counsel" and that the defendant could, therefore, "make out a claim of ineffective assistance only by pointing to specific errors made by trial counsel." *Id*. at 662, 666.

*Cronic* at 658-660. These circumstances include (1) the complete denial of counsel, i.e., such as where counsel is "totally absent, or prevented from assisting the accused during a critical stage of the proceeding," (2) circumstances where counsel "entirely fails" to subject the state's case to "meaningful adversarial testing," (3) circumstances where counsel "actively represented conflicting interests" and (4) circumstances where "although counsel is available to assist the accused," "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate." *Id.* at 658-660 and fn. 25, 28; *see also Strickland* at 692 ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice."). J.R. contends that this is such a case, i.e., that representation by an attorney with a suspended license is a per se violation of an accused's constitutional right to counsel. J.R. argues that because Brooks "did not rise to the level of counsel contemplated by the Supreme Court of Ohio's standards for an attorney," "nobody filled the role of the attorney contemplated by the Sixth Amendment"[8] for J.R. during the bindover proceedings and that, due to this "structural error," J.R. was not required to show specific attorney errors or prejudice from Brooks' representation in order to

---

[8] Although J.R. asserts that her constitutional right to counsel under both the United States and Ohio Constitutions were violated, she specifically addresses only "the Sixth Amendment violation in [her] case" in her argument. As discussed in greater detail below, we analyze J.R.'s right to the effective assistance of counsel through the lens of due process. However, because J.R. does not claim that she was entitled to greater protection or was afforded broader rights under the Ohio Constitution, we do not separately analyze J.R.'s rights under the United States and Ohio Constitutions here.

establish a violation of her constitutional right to the effective assistance of counsel. *See Lucas* at ¶ 33-43 (discussing structural error in the context of the Sixth Amendment right to counsel).[9]

{¶ 27} The state responds that there is no legal basis for applying a per se rule that representation by an attorney with a suspended license violates a juvenile's constitutional right to counsel. The state further asserts that J.R. has not shown that she was denied her right to the effective assistance of counsel because she was "represented by licensed attorneys from the moment her case was bound over to the General Division, through multiple pretrials, plea negotiations, change of plea, and sentencing" and because she has not shown that "Brooks' actions" during the

---

[9] In *Lucas*, the appellant claimed that he was denied the right to counsel under the Sixth Amendment and *Cronic* due to counsel's animus towards and bias against him. 2020-Ohio-1602, 154 N.E.3d 262, at ¶ 33-52. This court held that the appellant was not denied his right to counsel, that appellant's reliance on *Cronic* was misplaced and that a structural-error analysis was inapplicable where appellant's counsel was present, participated in the trial, cross-examined the state's witnesses and did not fail to attempt to test the state's case. *Id*. at ¶ 37. The court explained:

> Structural error, such as the absence of counsel for a criminal defendant, is characterized by the "entire conduct of the trial from beginning to end [being] obviously affected[.]" *Arizona v. Fulminante*, 499 U.S. 279, 309-310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The total deprivation of the right to counsel at trial is a constitutional deprivation and structural defect that affects "the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id*. at 310. Structural error is said to infect the entire trial process. *Neder v. United States*, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).

> Appellant was not totally deprived of his right to counsel throughout the entire trial. Nor do we find that counsel's alleged pretrial statement infected the entire trial process.

*Lucas* at ¶ 38-39.

bindover proceedings fell below an objective standard of reasonable representation or prejudiced J.R. under the *Strickland* test.

{¶ 28} In support of her argument, J.R. cites this court's decision in *State v. Newcome*, 62 Ohio App.3d 619, 577 N.E.2d 125 (8th Dist.1989). In *Newcome*, the defendant filed a postsentence motion to withdraw his guilty pleas to four counts of sexual battery, arguing that he was denied the effective assistance of counsel because his defense counsel was under suspension[10] at the time he entered his guilty pleas. *Id.* at 620. This court held that the "[d]efendant did not receive his constitutional right to the assistance of counsel at the time he pled guilty because he was represented by counsel who was suspended from the practice of law" and that, therefore, the defendant had "met his burden of establishing the existence of manifest injustice" to warrant the postsentence withdrawal of his guilty pleas. *Id.*

{¶ 29} *Newcome*, however, was a conceded error case. The state agreed that, under the circumstances of that case, the defendant "should have the opportunity to withdraw his plea." *Id.* Because the state had conceded the error, the court's discussion of the issue was brief. The panel did not provide any analysis of the issue or cite to any legal authority in support of its determination that the "[d]efendant did not receive his constitutional right to the assistance of counsel at the time he pled guilty because he was represented by counsel who was suspended from the practice of law." *Id.*

---

[10] There are very limited facts set forth in the *Newcome* decision. Accordingly, it is unknown what led to defense counsel's suspension in that case.

{¶ 30} In support of its argument, the state cites this court's decision in *State v. Allen*, 121 Ohio App.3d 666, 700 N.E.2d 682 (8th Dist.1997). In *Allen*, Allen filed a petition for postconviction relief, arguing that he was denied his right to effective assistance of counsel at the preliminary hearing because, unbeknownst to him, Thomas McMahon, the attorney who had been appointed to represent him at the preliminary hearing (and who had advised him to waive his right to a preliminary hearing), had been suspended from the practice law in Ohio at the time he represented Allen. *Id.* at 667-668. Allen claimed that he had relied upon McMahon's advice to waive the preliminary hearing despite knowing that his nephew had confessed to the charges at issue and that a preliminary hearing might have caused the police to further investigate the case. *Id.* at 668. Following his direct appeal, Allen learned that McMahon had been indefinitely suspended from the practice of law before he was appointed to represent him at the preliminary hearing. McMahon had received a public reprimand resulting from neglect of an unrelated legal matter. When McMahon failed to pay ordered costs, the Ohio Supreme Court found him in contempt and granted him ten days within which to purge the contempt. When McMahon failed to purge the contempt, the Ohio Supreme Court ordered his indefinite suspension. *Id.*

{¶ 31} In *Allen*, which was decided after *Newcome*, the panel affirmed the trial court's denial of the petition for postconviction relief and "decline[d] to impose a per se rule that would vitiate the results of a criminal trial in the absence of demonstrated error and prejudice resulting from the suspended attorney's

representation" where the "only purported act of legal representation" by the suspended attorney "consisted of advising a petitioner that he should waive the right to a preliminary hearing." *Id.* at 667-668. The court held that although "McMahon's suspension from the practice of law prevented him from representing petitioner in the capacity as an 'attorney' at the preliminary hearing," his suspension did "not necessarily suggest a per se rule that petitioner lacked 'counsel' in a way that would void his conviction." *Id.* at 669.

{¶ 32} In reaching its decision, this court distinguished *Newcome* as follows:

> Violations of the Sixth Amendment right to counsel do not necessarily require per se reversals of convictions. In *State v. Bonnell*, 61 Ohio St.3d 179, 573 N.E.2d 1082 (1991), the supreme court rejected the imposition of a per se rule for Sixth Amendment violations occurring at arraignment and held that the accused "must demonstrate that he was prejudiced by the absence of counsel at the arraignment." *Id.* at 182; *see, also, State v. Evans*, 63 Ohio St. 3d 231, 250, 586 N.E.2d 1042 (1992).

> Petitioner cites to our holding in *State v. Newcome* as reflecting our adoption of a per se rule relating to Sixth Amendment violations, but the issue in *Newcome* was whether the trial court abused its discretion by refusing to permit Newcome to withdraw his guilty plea after the parties learned that Newcome's attorney had been under suspension at the time. With the state agreeing that Newcome should have been permitted to withdraw his guilty plea, we held that Newcome demonstrated manifest injustice sufficient to permit the plea withdrawal. 62 Ohio App.3d at 620. In reaching this conclusion, we stated, "Defendant did not receive his constitutional right to the assistance of counsel at the time he pled guilty because he was represented by an attorney who was suspended from the practice of law." *Id.*

> The quoted portion of *Newcome* should not be read as imposing a per se rule. Because the state conceded the issue on appeal, we had no occasion to engage in any analysis on the right to counsel issue. Moreover, as the trial court noted, the violation in *Newcome*

culminated with an uncounseled guilty plea, the ultimate act in a criminal case. The extent of petitioner's lack of representation in this case, however, consisted only of waiving the right to a preliminary hearing. As a practical matter, waiving the preliminary hearing simply bound the matter over to the grand jury, which found probable cause to return an indictment. The trial court appointed different counsel to represent Petitioner at his arraignment in the court of common pleas, and petitioner's Sixth Amendment rights were preserved throughout the trial.

*Allen* at 669-670.

{¶ 33} The court further noted that its "position," i.e., rejecting a per se rule that representation by a suspended attorney violates a defendant's Sixth Amendment right to counsel, was "consistent with federal court decisions construing alleged per se violations of the Sixth Amendment":

Per se violations of the right to counsel have only been found to arise in one of two limited circumstances: (1) counsel was not, at the time of the accused's trial, duly licensed to practice law because of a failure ever to meet the substantive requirements to practice law or (2) the attorney is implicated in the accused's crimes. *See Bellamy v. Codgell*, 974 F.2d 302, 306 (2d Cir.1992); *Vance v. Lehman*, 64 F.3d 119, 122 (3d Cir.1995). As to the first criteria (which is applicable to the issue raised in this appeal), the "constitutional question is whether the court has satisfied itself of the advocate's competence and authorized him to practice law." *Reese v. Peters*, 926 F.2d 668, 670 (7th Cir.1991).

*Allen* at 670-671.

{¶ 34} The court held that McMahon's suspension "did not implicate his qualifications 'ever' to meet the substantive qualifications to practice law in the state of Ohio," that his "admission to the bar necessarily indicated either that he passed the Ohio bar examination or was approved for admission without examination by virtue of admission to the bar of another state" and that "having gained proper

admission to the bar," McMahon's suspension "does not suggest a per se violation of the right to counsel." *Id.* at 671.

{¶ 35} The court found that the defendant had failed to show any prejudice resulting from McMahon's advice to waive the preliminary hearing, noting that "[g]iven the compelling evidence that suggested probable cause to issue an indictment," it could not say that "the result would have been different" if the defendant had been appointed "fully licensed counsel" and had not waived the preliminary hearing. *Id.* at 670, 672. Because the defendant had failed to show "a constitutional error in the proceedings below," the court affirmed the trial court's denial of the defendant's petition for postconviction relief. *Id.*; *see also State v. Jordan*, 5th Dist. Muskingum No. CT2003-0029, 2005-Ohio-6064, ¶ 43 (where defendant's trial counsel was suspended from the practice of law on the second day of trial but word of the suspension had not "reached the trial judge or anyone in the courtroom on that day," court did not find "the existence of a per se violation" of defendant's rights "based solely on defense counsel's suspension").

{¶ 36} In the context of criminal proceedings, courts have consistently recognized that "a layman masquerading as an attorney," i.e., a person who has never been properly licensed to practice law in any jurisdiction, or who obtained admission to the bar by fraudulent means, cannot be considered "counsel" under the Sixth Amendment regardless of the legal skill exercised. Representation of a defendant by such an "attorney" is generally to be a per se violation of the defendant's Sixth Amendment right to counsel, without the need to establish

*Strickland*'s requirements. *See, e.g., Solina*, 709 F.2d at 161, 166-169 (2d Cir.1983); *United States v. Novak*, 903 F.2d 883 (2d Cir.1990); *Huckelbury v. State*, 337 So.2d 400, 402-403 (Fla.App.1976); *People v. Felder*, 47 N.Y.2d 287, 291, 293, 418 N.Y.S.2d 295, 391 N.E.2d 1274 (1979); *see also* Annotation, *Criminal Defendant's Representation by Person Not Licensed to Practice Law as Violation of Right to Counsel*, 19 A.L.R.5th 351 (1994).

{¶ 37} Some courts have held that "a per se rule of ineffectiveness" is warranted only where counsel has never been admitted to practice in any jurisdiction. *See, e.g., United States v. Mitchell*, 216 F.3d 1126, 1132 (D.C.Cir.2000) (declining "to extend the per se ineffectiveness rule beyond those cases in which a defendant is represented by a person never properly admitted to any bar" and holding that "the fact of suspension does not, by itself, render counsel ineffective under the Sixth Amendment"); *United States v. Watson*, 479 F.3d 607, 611 (8th Cir.2007) (declining "to extend a per se ineffective assistance of counsel rule to cases where the defendant was represented by a trained and qualified attorney, albeit one with licensing problems"); *see also Elfgeeh v. United States*, 681 F.3d 89, 93 (2d Cir.2012) (extending the "per se ineffectiveness rule" to representation by an individual, who prior to the representation in question, had been disbarred in all jurisdictions in which he or she had once been admitted).

{¶ 38} Other courts have also distinguished between "technical" licensing defects or "administrative" suspensions and "serious" or "substantive" violations in considering whether representation by a suspended or unlicensed attorney is a per

se violation of an accused's right to counsel under the Sixth Amendment. *See, e.g., Solina*, 709 F.2d at 167; *Novak*, 903 F.2d at 888-890; *see also People v. Gamino*, 362 Ill. Dec. 605, 2012 IL App (1st) 101077, 973 N.E.2d 1001, ¶ 21-22 (2012) ("a criminal defendant who is unknowingly represented by an individual who has been disbarred or suspended from the practice of law for any reason relating to lack of legal ability or moral character suffers a per se violation of his sixth amendment right to effective assistance of counsel"); *Grant*, 2010 PA Super 45, 992 A.2d 152, at ¶ 19-20 ("We reject the * * * distinction between administrative and substantive discipline. Courts have consistently distinguished between technical licensing defects and serious violations of bar regulations reflecting an incompetence to practice law. Where the attorney's license has been suspended or his/her credentials to practice have otherwise been impaired as a result of mere technical defects, the constitutional right to counsel is not violated and prejudice is not presumed. Where the attorney's license has been suspended or he/she has been disbarred for substantive violations, constitutional rights are violated and harm is presumed."). *But see People v. Pubrat*, 451 Mich. 589, 597, 548 N.W.2d 595 (1996) ("The dispositive issue is the attorney's effectiveness as counsel, rather than the nomenclature used to describe the disciplinary proceedings. Either administrative or substantive discipline may reflect on an attorney's professional competency, and either may also reflect shortcomings that are purely personal. * * * [A]dministrative discipline may reflect on an attorney's fitness to practice law, while substantive discipline will not always demonstrate professional incompetence."); *see also People*

*v. Kenny,* 30 P.3d 734, 742-744 (Colo.App. 2000) (rejecting a per se rule of ineffectiveness where properly licensed attorneys have been suspended or disbarred and "the technical/substantive distinction" and holding that "if an attorney is less than fully licensed, the Sixth Amendment's concerns are best satisfied by applying a case-by-case approach"); *Cantu v. State*, 930 S.W.2d 594, 601-603 (Tex.Crim.App.1996) (applying a "case-by-case approach" in holding that a suspended attorney "is incompetent as a matter of law if the reasons for the discipline imposed reflect so poorly upon the attorney's competence that it may reasonably be inferred that the attorney was incompetent to represent the defendant in the proceeding in question" and identifying seven noninclusive factors to consider in determining whether a suspended attorney is "incompetent as a matter of law").[11]

{¶ 39} Most courts that have considered the issue have, however, held that representation by a once properly licensed attorney who was suspended for the nonpayment of registration fees or bar dues does not, in and of itself, constitute a per se violation of a defendant's Sixth Amendment right to counsel. *See, e.g., Beto v. Barfield*, 391 F.2d 275 (5th Cir.1968); *Reese*, 926 F.2d at 669-670; *United States v. Dumas*, 796 F. Supp. 42, 45-46 (D.Mass.1992); *People v. Medler*, 177 Cal. App.3d 927, 223 Cal. Rptr. 401 (1986); *Dolan v. State*, 469 So.2d 142 (Fla.App.1985); *Cornwell v. Dodd*, 270 Ga. 411, 412, 509 S.E.2d 919 (1999); *People v. Brigham*, 151

---

[11] In *Kenny* and *Cantu*, the courts stated that this inquiry is "totally separate" from the traditional *Strickland* analysis because, "if trial counsel is found to be incompetent as a matter of law," there would be no need to inquire into attorney errors or prejudice. *Kenny* at 744; *Cantu* at 602-603 and fn. 8.

Ill.2d 58, 63-64, 600 N.E.2d 1178 (1992); *Johnson v. State*, 225 Kan. 458, 590 P.2d 1082 (1979); *Jones v. State*, 747 S.W.2d 651, 654-655 (Mo.App.1988); *State v. Vanderpool*, 286 Neb. 111, 124, 835 N.W.2d 52 (2013); *New Jersey v. Green*, 274 N.J. Super. 15, 643 A.2d 18 (N.J.App.1994); *People v. Kieser*, 79 N.Y.2d 936, 1175, 582 N.Y.S.2d 988, 591 N.E.2d 1174 (1992); *Commonwealth v. Bretz*, 2003 PA Super 298, 830 A.2d 1273; *Hill v. State*, 393 S.W.2d 901 (Tex.Crim.App.1965). *But see People v. Brewer*, 88 Mich.App. 756, 761-762, 279 N.W.2d 307 (1979) (although recognizing that the alleged suspension of defendant's attorney for failure to pay his bar dues did not make out a per se case of ineffective assistance of counsel, remanding for an evidentiary hearing to determine whether the allegations were correct and whether the defendant had received inadequate assistance of counsel due to "the implications, in terms of quality of representation, arising out of counsel's having neglected to pay his annual dues").

{¶ 40} In concluding that an attorney suspended for failure to pay registration fees or bar dues could still constitute "counsel" for Sixth Amendment purposes, some courts have looked to the historic meaning of "counsel" and the fact that licensing of attorneys has not always been a prerequisite for the practice of law. In *Reese*, for example, the defendant's attorney had been suspended from the practice of law in Illinois after failing to pay his bar dues before he represented the defendant at trial in an Illinois court. 926 F.2d at 669. The defendant argued that his attorney's suspension was an "automatic violation" of the Sixth Amendment because he had no "assistance of counsel" at trial. *Id.* The Seventh Circuit disagreed

and held that the suspended attorney could still meet the requirements of "counsel"

for Sixth Amendment purposes, maintaining that it was akin to an attorney who is

admitted to practice pro hac vice in a case:

> Reese asks us to equate the "Counsel" to which the sixth amendment refers with "member of the bar in good standing" in modern parlance. * * * Reese's representative at trial, was not authorized to practice law. He had neglected to pay his dues, and the state had suspended his license. * * * Although [Reese's attorney] eventually paid the dues and penalties and was reinstated to the bar, * * * nothing we could find in Illinois law makes the reinstatement retroactive. * * * That means, Reese submits, that he had no "Assistance of Counsel for his defence" within the meaning of the Constitution.
>
> * * *
>
> "Counsel" in 1791 meant a person deemed by the court fit to act as another's legal representative and inscribed on the list of attorneys. *See* Section 35 of the Judiciary Act of 1789. There were no bar exams, no unified bars, no annual dues, no formal qualifications. Although there were a handful of law schools, none was accredited by the ABA (there was no ABA), and few students completed the program. * * * Would-be lawyers earned the right to practice through apprenticeship, appearing in court under the tutelage of a practitioner until they satisfied the presiding judge that they could handle cases independently. Part of that tradition survives in the practice of admission *pro hac vice.* Courts grant motions allowing representation by persons who do not belong to their bars. Usually the person admitted *pro hac vice* belongs to *some* bar, but it may be the bar of a distant state or a foreign nation. The enduring practice of admission *pro hac vice* demonstrates that there is no one-to-one correspondence between "Counsel" and membership in the local bar.
>
> The *constitutional* question is whether the court has satisfied itself of the advocate's competence and authorized him to practice law. * * * Lawyers who do not pay their dues violate a legal norm, but not one established for the protection of clients; suspensions used to wring money from lawyers' pockets do not stem from any doubt about their ability to furnish zealous and effective assistance. [Reese's counsel] may well have belonged to the bar of a federal district court in 1980,

and his failure to pay his state dues would not have produced automatic suspension from the federal bar. * * *

It would make no sense to say that [Reese's counsel] could furnish "Counsel" in 1980 in a federal prosecution, to which the sixth amendment applies directly, but not in a state prosecution, to which the sixth amendment applies only by its absorption through the due process clause of the fourteenth. * * * [A] lawyer whose license had been suspended for failure to pay dues still may be "Counsel." * * * What matters for constitutional purposes is that the legal representative was enrolled after the court concluded that he was fit to render legal assistance. [Reese's counsel] satisfies that standard.

*Reese* at 669-670.

{¶ 41} Other courts have reasoned that representation by a suspended attorney does not per se violate the Sixth Amendment because an attorney's failure to pay bar dues has "nothing to do" with the attorney's competence, legal ability or skill. As the Kansas Supreme Court explained in *Johnson*, 225 Kan. at 465, 590 P.2d 1082:

In spite of his suspension, we cannot say as a matter of law that [defense counsel] was unable to represent effectively the [defendant] during the period of his suspension. Although the payment of the registration fee is a prerequisite to the ethical practice of law in this state, the payment itself has nothing to do with the legal ability of the attorney. Just as the payment of the fee does not guarantee that an attorney will practice law in a competent manner, the nonpayment of the fee does not necessarily imply that the nonpaying attorney will perform in an incompetent manner. In each instance, we must examine the actual representation afforded the accused person. In so doing, this court is obligated to * * * look to the substance of the representation in discerning the competency or incompetency of the representation by the attorney.

*Id.* at 465; *see also Jones*, 747 S.W.2d at 655; *Hill*, 393 S.W.2d at 904; *Vanderpool* at 123. *But see Brewer*, 88 Mich. App. at 762, 279 N.W.2d 307

(recognizing that "the failure of an attorney to remit his state bar dues is strong evidence that such attorney is no longer sufficiently interested in the practice of law to adequately defend his client's interests").

**Juvenile's Right to Counsel as an Element of Due Process**

{¶ 42} In resolving the issue presented in this case, we are mindful of the source and context of the right at stake. At issue here is whether J.R., a juvenile, was denied her right to the assistance of counsel when she was represented by Brooks during the juvenile court bindover proceedings. As such, we believe "[o]ur analysis here must be placed in the context of the juvenile courts, which occupy a unique place in our legal system." *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, at ¶ 65.

{¶ 43} Whereas a criminal defendant's right to counsel emanates from the Sixth Amendment, a juvenile's constitutional right to counsel in juvenile court proceedings "'flows to the juvenile through the Due Process Clause of the Fourteenth Amendment, not the Sixth Amendment.'"[12] *State v. Bode*, 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156, ¶ 15, 19 (noting that because "juvenile proceedings are civil," "juvenile rights to counsel" in those proceedings "arise under the constitutional protection of due process"), quoting *In re C.S.* at ¶ 79; *see also State*

---

[12] We are aware that, at times, this court and others have conflated the two, noting that an accused juvenile has "the same rights" to effective assistance of counsel as an adult criminal defendant under the Sixth Amendment. In the particular circumstances of this case, however, we believe it is important to highlight and consider the source of a juvenile's constitutional right to the assistance of counsel.

*v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 23 ("Due-process rights are applicable to juveniles through the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.").[13]   The Ohio Supreme Court explained the significance of this distinction in *In re C.S.* as follows:

> Because the juvenile's right to counsel is predicated on due process, it is malleable rather than rigid. * * * "For all its consequence, 'due process' has never been, and perhaps can never be, precisely defined. * * * [D]ue process 'is not a technical conception with a fixed content unrelated to time, place and circumstances.' [*Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)].   Rather, the phrase expresses the requirement of 'fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty.  Applying the Due Process Clause is therefore an uncertain enterprise which must discover what 'fundamental fairness' consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake." *Lassiter v. Dept. of Social Servs. of Durham Cty., North Carolina*, 452 U.S. 18, 24-25, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).

> The flexibility of due process lies in its scope after it has been determined that some process is due, and due process doctrine recognizes that "not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).  A court's task is to ascertain what process is due in a given case, * * * while being true to the core concept of due process in a juvenile case — to ensure orderliness and fairness. * * *

---

[13] The General Assembly has acknowledged the importance of counsel in juvenile proceedings by codifying a juvenile's right to counsel in R.C. 2151.352.  R.C. 2151.352 provides, in relevant part, that "[a] child * * * is entitled to representation by legal counsel at all stages of the proceedings under * * * Chapter 2152. of the Revised Code."  Juv.R. 4(A) also states, in relevant part: "Every party shall have the right to be represented by counsel and every child, * * * the right to appointed counsel if indigent.  These rights shall arise when a person becomes a party to a juvenile court proceeding."

The fact that the right to counsel in a juvenile case arises from due process does not diminish its importance. A juvenile typically lacks sufficient maturity and good judgment to make good decisions consistently and sufficiently foresee the consequences of his actions. * * * Thus, "[t]he juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings and to ascertain whether he has a defense and to prepare and submit it." (Footnote omitted.) *Gault*, 387 U.S. at 36, 87 S.Ct. 1428, 18 L.Ed.2d 527.

*In re C.S.* at ¶ 80-82.

{¶ 44} Applying these principles and considering the totality of the circumstances surrounding Brooks' representation of J.R. in this case, including the reason for and duration of Brooks' suspension, the context, scope and duration of Brooks' representation of J.R. and other factors relevant to Brooks' effective representation of J.R., we find that J.R. was denied her constitutional right to the assistance of counsel under the United States and Ohio Constitutions when she was represented by Brooks during the bindover proceedings.

{¶ 45} The state attempts to downplay the significance of Brooks' role and suspension in this case. The state asserts that there was no denial of J.R.'s right to counsel because (1) the probable cause and amenability hearings at which Brooks represented J.R. were "preliminary" and "non-adjudicatory," (2) Brooks' suspension was simply due to "failure to pay his fees" and (3) "Brooks did not fail to ever meet the substantive requirements [for practicing law in Ohio] because he was at one time a properly licensed attorney authorized to practice law." We disagree.

{¶ 46} Few, if any, determinations are more significant in the life of an accused juvenile offender than whether the accused juvenile offender will be tried in

an adult court. *See, e.g., Smith*, Slip Opinion No. 2022-Ohio-274, at ¶ 21 ("'The transfer hearing implicates far more significant issues than the venue or forum of trial; it serves as a vehicle by which a child offender is deprived of the rehabilitation and treatment potential of the juvenile-justice system.'"), quoting *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 73 (O'Connor, C.J., dissenting); *Kent*, 383 U.S. at 553-554, 556, 560-562, 86 S.Ct. 1045, 16 L.Ed.2d 84. As such, a juvenile bindover proceeding is much more akin to the "ultimate act in a criminal case" in *Newcome* than the preliminary hearing in *Allen*.

{¶ 47} Indeed, although "[o]ther rights of a child may be waived with permission of the court," this state recognizes that representation by counsel at a bindover proceeding is so important that it cannot be waived. Juv.R. 3(A)(1), (E) ("A child's right to be represented by counsel may not be waived * * * at a hearing conducted pursuant to Juv.R. 30."); Staff Note to 7-1-94 Amendment to Juv.R. 3 ("Juv.R. 3 now makes specific reference to bindover proceedings delineated in Juv.R. 30 to remind the court and practitioners that a juvenile cannot waive counsel at any stage of the bindover procedure."); *State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, ¶ 36 ("[T]he child's right to counsel is required by Juv.R. 3, which provides that a child may not waive the right to be represented by counsel at a transfer hearing conducted pursuant to Juv.R. 30.").

{¶ 48} At the time Brooks entered his appearance for J.R. in March 2020, he had been under suspension from the practice of law in Ohio for more than four

months for his failure to comply with Gov.Bar R. VI and had failed to comply with his Ohio continuing legal education requirements for more than five years.

{¶ 49} This state's registration and continuing legal education requirements are not unduly burdensome. Active attorneys must file a certificate of registration with the Office of Attorney Services of the Supreme Court and pay a $350 registration fee on or before the first day of September in each odd-numbered year. Gov.Bar R. VI(2)(A). They must also complete 24 hours of accredited continuing legal education activities, including two-and-a-half hours of instruction on topics related to professional conduct, every two years. Gov.Bar R. X(3).

{¶ 50} There is nothing in the record to suggest that Brooks' suspension for failure to comply with the Ohio Supreme Court's biennial registration requirements was due to mere oversight. Brooks was not immediately suspended after he failed to timely submit his form and fee. He was suspended from the practice of law in Ohio only after (1) he had not registered for the 2019/2021 attorney-registration biennium by the September 1, 2019 deadline, (2) he was sent notice of his noncompliance and informing him that he would be summarily suspended from the practice of law in Ohio and not entitled to practice law in Ohio unless he filed evidence of compliance with the requirements of Gov.Bar R. VI or came into compliance within 60 days of the deadline and (3) he failed to file evidence of compliance with Gov.Bar R. VI or to come into compliance with the rule within 60 days of the deadline. Gov.Bar R. VI(10)(B); *11/05/2019 Administrative Actions*, 2019-Ohio-4529.

{¶ 51} Pursuant to Gov.Bar R. VI(10)(D), an attorney who is summarily suspended for failure to comply with the registration requirements "may be reinstated to the practice of law by applying for reinstatement with the Office of Attorney Services, complying with the requirements of [Gov.Bar R. VI(2)], including payment of the applicable registration fee, and paying a reinstatement fee of three hundred dollars." However, this is not a situation where, upon learning of his suspension, Brooks promptly complied with Gov.Bar VI, paid his fees and was reinstated. To date, Brooks has never been reinstated.

{¶ 52} Pursuant to Gov.Bar R. VI(10)(C), an attorney who is summarily suspended pursuant to Gov.Bar R. VI(10)(B) "shall not," among other things, "[p]ractice law in Ohio," "[h]old the attorney's self out as authorized to practice law in Ohio" or "[p]ractice before any nonfederal court or agency in this state on behalf of any person except the attorney's self" — all of which Brooks did here. There is nothing in the record to suggest that Brooks had advised J.R. or her family that he was suspended from practicing law in Ohio during the time of his representation. By all accounts, although Brooks was aware of his suspension, J.R., the state and the trial court were unaware of his suspension until December 2021, during the pendency of this appeal. Although we recognize that "'the breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel,'" *Allen*, 121 Ohio App.3d at 672, 700 N.E.2d 682, quoting *Nix v. Whiteside*, 475 U.S. 157, 165, 89 L.Ed.2d 123, 106 S.Ct. 988 (1986), we believe that Brooks' knowing, willful violation of orders from the Ohio Supreme Court and

his unlawful representation of clients while suspended reflects directly on Brooks' lack of legal competence to provide effective assistance of counsel to accused juveniles such as J.R. *See also Pubrat*, 451 Mich. at 597, 548 N.W.2d 595 (recognizing that "the failure to pay bar dues may be an intentional violation of the rule which demonstrates that the attorney does not accord proper weight to the rules" and "also may raise the possibility that an attorney will neglect a client's interests as well because the attorney is unable or unwilling to keep track of obligations").

{¶ 53} Furthermore, at the time he represented J.R., Brooks was not only subject to suspension under Gov.Bar R. VI(10)(B), he had not complied with mandatory continuing legal education requirements for more than five years.

{¶ 54} The stated purpose of Ohio's continuing legal education requirement is "to maintain and improve the quality of legal and judicial services in Ohio." Gov.Bar R. X(1)(A). Compliance with continuing legal education requirements is an important and essential obligation of each attorney licensed to practice law in this state, to ensure that Ohio attorneys maintain the knowledge and skills necessary to provide effective assistance to clients. Giving due consideration to the importance and role of continuing legal education in this state, we believe "a failure of this magnitude" also "reflects directly on [Brooks'] lack of competence to practice law" here. *See Grant*, 2010 Pa Super 45, 992 A.2d 152, at ¶ 22 ("any person failing to comply [with continuing legal education requirements] for an extended period of time * * * must be presumed to be incompetent to practice law in this

Commonwealth and incapable of representing clients in our courtrooms"). Where, as here, an attorney repeatedly fails to comply with basic registration and continuing legal education requirements, one cannot help but question whether the attorney is providing competent legal representation, including exercising reasonable judgment, paying sufficient attention to issues pertinent to the representation[14] and giving an accused proper legal advice. If an attorney cannot be bothered to comply with these most basic requirements of practicing law in the state, how can we have confidence that the attorney is effectively representing his or her juvenile clients?

---

[14] Upon review of the record, there are a couple of items that give us pause here. For example, during the amenability hearing, Probation Officer Brill testified that when J.R. and her mother moved to Cuyahoga County in April 2018, J.R. was on probation for "an *F1* battery case" in Wisconsin. Dr. Williams' psychological evaluation report similarly refers to a charge of "Battery (F-1)" in Case No. 17JV124. This was apparently the only prior felony case in which J.R. was allegedly involved. However, based on other information in the record regarding J.R.'s Wisconsin adjudications, it does not appear that these statements regarding a prior "*F1* battery case" are correct. (Emphasis added.)

The information that is in the record relating to the Wisconsin charges (including the only sources relating to the Wisconsin charges identified the psychological evaluation report) indicates that J.R. was charged in Case No. 17JV124 with one count of what would have been *Class I* felony battery under Wisconsin law if she were an adult. That same source indicates that "it was agreed" that J.R. would admit to an amended charge of Class A misdemeanor battery on that count and another Class A misdemeanor battery count in that case; to a misdemeanor battery count in 17JV115 and to a misdemeanor count of obstructing an officer in 17JV138. Although Brill acknowledged, during Brooks' cross-examination, that he did not know any of the details of the "felony battery" case, including what facts led to the "felony battery" charge or how the elements of that charge under Wisconsin law compared with a "felony battery" charge under Ohio law, Brooks did not object to Brill's testimony or otherwise address these discrepancies at the amenability hearing. Further, in the psychological evaluation report — to which Brooks stipulated on J.R.'s behalf — Dr. Williams noted that she was denied access to records relating to J.R.'s "Applewood Centers' Tapestry clinical diagnoses, interventions and treatment progress" from March 2019-June 2020 and that J.R.'s case manager, with whom J.R. reportedly had a "good relationship," had informed Dr. Williams that she "could not discuss the case" with Dr. Williams because she did not have an appropriate release. There is no indication in the record that Brooks raised this issue with the court.

{¶ 55} Although the record reflects that, at the amenability hearing, Brooks cross-examined the state's witnesses, objected to testimony by Detective McNeeley on matters regarding which he had no personal knowledge and objected to the admission of Morgan's statement, we also note that Brooks stipulated to probable cause and presented no witnesses on J.R.'s behalf at the amenability hearing.[15]

{¶ 56} Whether those decisions were, in fact, reasonable strategic decisions given the evidence and the circumstances, we cannot say there is insufficient evidence in the record before us to allow us to make that determination. Although a "properly licensed" attorney is generally presumed to be competent and his or her strategic or tactical decisions entitled to deference, *see, e.g., State v. Moore,* 8th Dist. Cuyahoga Nos. 108962, 108963 and 108964, 2020-Ohio-3459, ¶ 50; *State v. Black,* 2019-Ohio-4977, 149 N.E.3d 1132, ¶ 35 (8th Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985), no such presumption or deference applies where, as here, the attorney is not properly licensed to practice law.

{¶ 57} Where a juvenile is facing the prospect of being tried in an adult court, no one should be left to doubt whether the juvenile received competent representation during those proceedings from an attorney who had been prohibited from practicing law in this state. As stated above, there are certain circumstances

---

[15] In her supplemental appellate brief, J.R. also asserts that Brooks "negotiated a deal on her behalf to participate in the state's case against her co-defendants, which ultimately led to the plea agreement in this case"; however, there is nothing in the record to support that claim. The record reflects only that, at the conclusion of the amenability hearing, Brooks advised the juvenile court that J.R. had "some information she would like to provide to the prosecution" and requested "time in which we could do that."

that are "so likely to prejudice the accused that the cost of litigating the effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658. Considering the totality of the circumstances here, we believe this is such a case and that the circumstances warrant the presumption that J.R. was denied the effective assistance of counsel without the need for J.R. to establish specific attorney errors or prejudice as a result of the representation.

{¶ 58} Because J.R. was denied her constitutional right to counsel during the bindover proceedings, we reverse J.R.'s convictions, vacate the juvenile court's July 14, 2020 order finding probable cause, vacate the juvenile court's August 17, 2020 order granting a discretionary transfer of the case to the General Division pursuant to R.C. 2152.12(B) and remand the case to the juvenile court for further proceedings.

{¶ 59} J.R.'s fourth assignment of error is sustained. Based on our resolution of J.R.'s fourth assignment of error, her remaining assignments of error are moot.

{¶ 60} Judgment reversed, vacated, and remanded.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

EMANUELLA D. GROVES, J., CONCURS;
MICHELLE J. SHEEHAN, J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION)

MICHELLE J. SHEEHAN, J., CONCURRING IN JUDGMENT ONLY:

{¶ 61} I respectfully concur in judgment only because I do not believe that the circumstances in this case warrant finding that appellant did not receive the assistance of counsel during the bindover proceedings. Our precedent requires that we analyze counsel's performance to determine whether appellant suffered ineffective assistance of counsel per the requirements of *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In so doing, I would overrule appellant's fourth assignment of error. I would further overrule her first and second assignments of error. However, I would notice plain error in the plea proceedings, vacate appellant's convictions, and find appellant's third assignment of error moot.

{¶ 62} As to appellant's first assignment of error, I would find that the juvenile court did not abuse its discretion in transferring the case to the general division of the common pleas court where it conducted an amenability hearing,

considered the applicable statutory factors, and its decision to transfer the case had a rational basis. *State v. Hughley*, 8th Dist. Cuyahoga No. 108771, 2020-Ohio-4741, ¶ 23. (Reviewing court is bound to affirm bindover decision where juvenile court weighs the statutory factors and there is a rational basis for its findings relating to those factors.)

{¶ 63} Appellant's second and fourth assignments of error are interrelated. Under the second assignment of error, appellant argues that she was denied the right to confront and cross-examine witnesses at the amenability hearing. Under the fourth assignment of error, appellant alleges ineffective assistance of counsel because 1) counsel was suspended from the practice of law, 2) counsel provided ineffective assistance resulting in prejudice by advising appellant to waive the preliminary hearing, and 3) counsel failed to enforce her right to confront and cross-examine witnesses at the amenability hearing.

{¶ 64} The Ohio Supreme Court held that a juvenile has a right to counsel and found that this right to counsel derived from the constitutional right to due process. *In re C.S.,* 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 79. But we have found that once the right to counsel is present, the right to effective assistance of counsel under the Sixth Amendment is also present. *In re I.R.,* 2021-Ohio-3103, 179 N.E.3d 138, ¶ 83 (8th Dist.) ("The right to counsel, guaranteed in juvenile proceedings by R.C. 2151.352 and by Juv.R. 4, includes the right to the effective assistance of counsel.").

{¶ 65} The majority opinion determines that the totality of the circumstances in this case warrants a presumption that appellant did not have counsel due to the nature and extent of counsel's suspension from the practice of law. However, this court has been presented with determining whether to presume ineffective assistance of counsel where counsel appeared under a suspended law license and I believe that precedent constrains our analysis of this case.

{¶ 66} In *State v. Allen*, 121 Ohio App.3d 666, 700 N.E.2d 682 (8th Dist.1997), this court recognized that a per se finding of ineffective assistance of counsel has been found where "(1) counsel was not, at the time of the accused's trial, duly licensed to practice law because of a failure ever to meet the substantive requirements to practice law or (2) the attorney is implicated in the accused's crimes." *Id.,* citing *Bellamy v. Codgell*, 974 F.2d 302, 306 (2d Cir.1992); *Vance v. Lehman*, 64 F.3d 119, 122 (3d Cir.1995); *United States v. Rondon*, 204 F.3d 376, 379-380 (2d Cir.2000).

{¶ 67} As these two circumstances do not apply in this case, I would not find that appellant received ineffective assistance of counsel, nor would I deviate from our precedent to presume appellant received ineffective assistance of counsel without an analysis of counsel's representation.

{¶ 68} In juvenile proceedings, once the right to counsel attaches so does the right to effective assistance of counsel. *In re I.R.,* 2021-Ohio-3103, 179 N.E.3d 138, ¶ 83. Although the majority opinion finds that a party in juvenile court whose attorney is suspended for failing to register and comply with CLE requirements may

be found to have not been represented by counsel, we are constrained by *Allen*, *supra*, to apply *Strickland,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, to determine whether suspended counsel's representation was ineffective. E.g., *In re Gray*, 8th Dist. Cuyahoga Nos. 75984 and 75985, 2000 Ohio App. LEXIS 1734, 4 (Apr. 20, 2000), citing *Jones v. Lucas Cty. Children Servs. Bd., 46* Ohio App.3d 85, 546 N.E.2d 471 (6th Dist.1984) ("The standard for ineffective assistance of counsel utilized in actions affecting orders of dispositions made by juvenile courts is the same as applied in criminal cases."). Thus, appellant must show that counsel's actions fell "below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136, 137, 538 N.E.2d 373 (1989), paragraph two of the syllabus, following *State v. Lytle*, 48 Ohio St. 2d 391, 358 N.E.2d 623 (1976); *Strickland* at 668. We recently explained the application of this standard:

> Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at paragraph two of the syllabus; *see also Strickland* at 687.

*State v. Courts*, 8th Dist. Cuyahoga No. 110368, 2022-Ohio-690, ¶ 35

{¶ 69} Under her fourth assignment of error, appellant argues that counsel erred by advising her to waive a probable cause hearing in the juvenile court. Even if counsel's advice to waive the probable cause hearing were construed as deficient representation, appellant has not shown that without a waiver of the hearing, the

outcome would be different; e.g., that the state would not have been able to present evidence sufficient of probable cause if a hearing were held. *State v. J.T.S.,* 10th Dist. Franklin No. 14AP-516, 2015-Ohio-1103, ¶ 52 ("Moreover, given the operative facts of the case as recited by the prosecutor, there is nothing in the record to suggest that a hearing would have yielded a different result."); *State v. Jackson,* 1st Dist. Hamilton Nos. C-180159 and C-180209, 2020-Ohio-80, ¶ 26 ("Jackson suffered no resulting prejudice because the record contains no indication that the state lacked sufficient evidence to prove his guilt or that the juvenile court would not have found probable cause that Jackson had committed the charged offenses."); *State v. Pruitt*, 11th Dist. Trumbull No. 2001-T-0121, 2002-Ohio-7164, ¶ 60 ("Even if defense counsel had not waived the preliminary bindover hearing and the state was required to produce evidence of probable cause, there is no indication that the state's evidence would fall short concerning appellant's alleged role in the crime.")

{¶ 70} Under the second assignment of error, I would find that appellant was not denied the right to confront and cross-examine witnesses at the amenability hearing in the juvenile court because amenability hearings are non-adjudicatory and the evidence presented need not meet the same standards required for admissibility at trial. *See In Re J.R.*, 8th Dist. Cuyahoga No. 110241, 2021-Ohio-2272, ¶ 37 ("Given that a probable cause hearing is non-adjudicatory, the evidence presented at a probable cause hearing need not meet the same standards required for admissibility at trial. Confrontation clause standards for the admissibility of evidence and the Ohio Rules of Evidence do not apply to probable cause hearings.").

{¶ 71} Accordingly, I would overrule the second assignment of error. Further, because I would not find error at the amenability hearing, I would not find counsel was ineffective at the amenability hearing.

{¶ 72} Finally, even though I would overrule appellant's first, second, and fourth assignments of error, I would notice plain error in the plea proceedings because the trial court did not strictly comply with Crim.R. 11(C)(2)(c) by failing to inform appellant that she was waiving the right to compulsory process. *State v. Wilson*, 8th Dist. Cuyahoga No. 82770, 2004-Ohio-499, ¶ 13 ("We find as plain error that the trial court did not properly inform the appellant of his constitutional right to compel, summon, or otherwise require witnesses to appear and testify on his behalf."); *State v. Day*, 8th Dist. Cuyahoga No. 88725, 2007-Ohio-4052, ¶ 31 (In finding plain error, the court held "[t]he trial court's failure to strictly comply with the requirement of informing appellant of his constitutional right to compulsory process is a substantial error and constitutes a manifest miscarriage of justice."). I would then vacate appellant's convictions, remand this case to the trial court, and find appellant's third assignment of error moot. *See State v. Bond*, 8th Dist. Cuyahoga No. 110520, 2022-Ohio-373, ¶ 31-34.